CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 14 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONELL J. BLOUNT, SR., ) | |
| Plaintiff, ) | Civil Action No. 7:05CV00556 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| ) | By Hon. Glen E. Conrad |
| GENE M. JOHNSON, et al. ) | United States District Judge |
| Defendants. ) | |

The plaintiff, Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. The plaintiff has asserted fourteen groups of claims against more than forty defendants.[1] The case is presently before the court for review pursuant to 28 U.S.C. § 1915A(a). Having reviewed the plaintiff's allegations, the court concludes that the majority of the plaintiff's claims must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). This provision provides, in pertinent part, that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails state a claim upon which relief may be granted.

## ANALYSIS

A.  Claim One

The plaintiff is presently incarcerated at Red Onion State Prison. In his first claim, the plaintiff alleges that Corporal Edwards, Corporal Taylor, Corporal Buchanan, Y. Taylor, R. Mullins, Dr. Williams, D. Yates, P. Adams, C. Moore, and V. Phipps acted with deliberate indifference to his medical needs for two weeks after he failed to receive his evening dosage of

---

[1] The claims are raised in the plaintiff's complaint, his first motion to amend (docket #4), and his second motion to amend (docket #8).

Zantac on February 10, 2005. The plaintiff alleges that during the two-week period, he vomited blood and acidic bile, and that he suffered severe stomach, chest, throat, and head pain.

It is well settled that a prison official may violate an inmate's Eighth Amendment right to be free from cruel and unusual punishment, if the official shows a deliberate indifference to the inmate's serious illness or injury. Estelle v. Gamble, 429 U.S. 97, 102 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the prison official must know of and disregard an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Moreover, in order to bring a deliberate indifference claim against non-medical prison officials, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Militier v. Beorn, 896 F.2d 848, 853 (4th Cir. 1990).

1. Corporal Taylor, Corporal Buchanan, and Corporal Edwards

The plaintiff alleges that Corporal Taylor, Corporal Buchanan, and Corporal Edwards acted with deliberate indifference to his medical needs by refusing to give him an emergency grievance form on February 10, 2005. However, having reviewed the record, the court concludes that the plaintiff's deliberate indifference claim must be dismissed as to these three defendants. There is no indication that Taylor, Buchanan, or Edwards was aware that the plaintiff was suffering from any severe medical problems as a result of not receiving his medication. Moreover, it is clear from the plaintiff's complaint and the referenced exhibits that these defendants did not prevent him from utilizing the prison's grievance procedure. The

2

plaintiff acknowledges in his complaint that he ultimately filed "numerous emergency grievance forms, regular grievance forms, informal complaint forms, and request forms" after he failed to receive his medication. (Compl. at 2). Therefore, the court concludes that the plaintiff has failed to allege sufficient facts to show that Corporal Taylor, Corporal Buchanan, or Corporal Edwards interfered with his ability to receive medical treatment or otherwise acted with deliberate indifference to a serious medical need. Accordingly, the court will dismiss the plaintiff's first claim as to these three defendants.

2. <u>Y. Taylor and R. Mullins</u>

The plaintiff alleges that Y. Taylor and R. Mullins hindered his ability to access the medical department by not processing an informal complaint and grievance. Specifically, the plaintiff signed an informal complaint on February 13, 2005, on which he stated that the "stopping" of his Zantac prescription had caused him to endure stomach, chest, throat, and head pain. (Ex. 6-A). Taylor responded to complaint the following day. Taylor found the complaint to be repetitive. Taylor noted that "#629 references your reflux meds being stopped." (Ex. 6-A). Upon receiving Taylor's response, the plaintiff submitted a grievance form on February 14, 2005. Mullins responded to the grievance the following day. Mullins advised the plaintiff that he would need to follow the proper procedure for requesting a prescription renewal prior to filing a grievance. Mullins further advised the plaintiff that he could file a grievance if his request for services was denied. (Ex. 7-A). Having reviewed the plaintiff's allegations and the referenced exhibits, the court concludes that the plaintiff has failed to allege sufficient facts to establish that Taylor or Mullins acted with deliberate indifference to a serious medical need. Accordingly, the plaintiff's first claim will be dismissed as to these two defendants.

3

### 3. Dr. Williams, D. Yates, P. Adams, C. Moore, and V. Phipps

The plaintiff alleges that Dr. Williams, D. Yates, P. Adams, C. Moore, and V. Phipps "signed [his] various complaint forms, yet did nothing." (Pl. Compl. at 2). The court concludes that this allegation is insufficient to state a claim of constitutional magnitude against these defendants. There is simply no indication that Dr. Williams and the other medical personnel disregarded an excessive risk to the plaintiff's health, or that the non-medical personnel interfered with his ability to obtain medical treatment. Accordingly, the plaintiff's first claim will also be dismissed as to Dr. Williams, D. Yates, P. Adams, C. Moore, and V. Phipps.

## B. Claim Two

In his second claim, the plaintiff alleges that Lieutenant Mullins used excessive force against him on March 29, 2005. Specifically, the plaintiff alleges that Mullins and other correctional officers ran into his cell and began placing his legal mail into an orange bag. When the plaintiff told the officers that he had a court date before a magistrate judge, one of the officers said "[f]uck you and court." (Compl. at 3). After the plaintiff told the officer that he did not have to use those words, the plaintiff alleges that Mullins said "I'll fuck you nigger." (Compl. at 3). According to the plaintiff, Mullins then "tried to shove his finger into [the plaintiff's] anus, but only managed to scratch [the plaintiff's] rectum." (Compl. at 3). The plaintiff alleges that when he woke up the following day, "there was blood all over the back of [the plaintiff's] boxer shorts and bed sheet." (Compl. at 3).

To establish an excessive force claim under the Eighth Amendment, an inmate must satisfy two elements: (1) that the prison official acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). With respect to the second element, an inmate "need not show that

4

the force used caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). However, absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis pain or injury. Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). Having reviewed the plaintiff's allegations regarding Lieutenant Mullins, the court concludes that the plaintiff has alleged sufficient facts to survive the court's sua sponte review.

As part of his second claim, the plaintiff alleges that Mullins retaliated against him for filing a grievance.[2] Although the officer's alleged retaliatory motive may be relevant to the plaintiff's Eighth Amendment claim, his allegations fail to state a separate claim against Mullins for retaliation. Specifically, the plaintiff has not demonstrated any manner in which his ability to exercise a specific constitutional right was chilled by Mullins' actions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (holding that inmates have no constitutional right to a grievance procedure and that conclusory allegations of retaliation fail to state a claim under § 1983); Davis v. Lester, 156 F. Supp. 2d 588, 592 at n.5 (W.D. Va. 2001). Accordingly, the court will dismiss the plaintiff's retaliation claim against Lieutenant Mullins.

C.  Claim Three

In his third claim, the plaintiff alleges that Nurse Moore, Corporal Fields, Corporal McClean, and Sergeant Day acted with deliberate indifference to his serious medical needs after he was placed on the loaf meal. According to the plaintiff, prison officials placed him on the loaf meal on April 1, 2005, after he complained about his dinner tray. The plaintiff alleges that

---

[2]  The plaintiff's second claim originally included an access to courts claim against Corporal Owens, Corporal Tompkins, Corporal Kennedy, Lt. Mullins, Sgt. Day, Sgt. O'Quinn, Corporal Lee, Corporal Nicholson, and John Doe. However, on October 4, 2005, the plaintiff moved to dismiss this claim from the complaint. The plaintiff also asked to have defendant Jane Doe dismissed from claim two. The plaintiff had alleged that Jane Doe tried to force him to submit to a rectal exam.

5

he vomited acidic bile and blood for three days after he tried to eat the loaf meal. The plaintiff further alleges that he received "zero medical care," even though he repeatedly told Moore, Fields, McClean, and Day that he was sick. (Compl. at 5). At this time, the court cannot conclude that the plaintiff's allegations are insufficient to survive the court's sua sponte review. Therefore, the court will not dismiss the plaintiff's third claim, to the extent that he alleges that Moore, Fields, McClean, and Day acted with deliberate indifference to his medical needs.

As part of claim three, the plaintiff also alleges that he was denied due process because he did not receive a hearing before being placed on the loaf meal by the warden, T. Ray. However, the court concludes that this claim is without merit. The Fourteenth Amendment does not "protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Sandin v. Conner, 515 U.S. 472, 478 (1995). Instead, process is due only when a change inflicts an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. As the United States Court of Appeals for the Seventh Circuit noted in Gates v. Huibregtse, 69 Fed. Appx. 326, 328 (7th Cir. 2003), "[p]rison is hardly known for its fine dining." Therefore, in such a setting, the court cannot conclude that the plaintiff's temporary placement on the loaf meal constituted an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see also Griffis v. Gundy, 47 Fed. Appx. 327, 328 (6th Cir. 2002) (holding that the district court properly dismissed the plaintiff's due process claim because "being fed food loaf does not implicate a due process liberty interest"). Accordingly, the court will dismiss this portion of claim three.

D. Claim Four

In his fourth claim, the plaintiff alleges that Nurse Roberts acted with deliberate

6

indifference to his serious medical needs on April 14, 2005. The plaintiff states that on that date, he failed to receive the evening dosage of his medication for chronic acid reflux. Therefore, he submitted an emergency grievance form, which stated that "acid was building up in [his] stomach." (Compl. at 5). The plaintiff alleges that Nurse Roberts responded to the grievance by stating that his complaint did not meet the definition of an emergency, and that he would receive his medication in the morning. The plaintiff further alleges that he ultimately vomited "all night" and that he experienced pain in his chest, stomach, and throat. (Compl. at 5).

The court concludes that the plaintiff's allegations fail to state a claim for deliberate indifference against Nurse Roberts. The plaintiff's complaint that "acid was building up in [his] stomach" did not constitute a medical need that was sufficiently serious to give rise to a constitutional claim. Furthermore, although the plaintiff states that he ultimately began to vomit and experience pain from not taking the medication, there is no indication that Nurse Roberts was aware of these problems at the time she responded to his grievance. Accordingly, the court concludes that the plaintiff has not alleged sufficient facts to show that Roberts knew of and disregarded an excessive risk to his health or safety. See Farmer, 511 U.S. at 834 (1994). For these reasons, the court will dismiss the plaintiff's fourth claim.

E. Claim Five

In his fifth claim, the plaintiff alleges that Dr. Bailey, the prison's dentist, acted with deliberate indifference to his serious dental needs. The plaintiff alleges that after suffering from "months of toothaches," he was finally taken to seek Dr. Bailey on May 4, 2005, who confirmed that the plaintiff had two cavities. (Compl. at 6). The plaintiff further alleges that although he explained to Dr. Bailey that "it is hard to eat and drink on some days due to the pain," and that

7

Case 7:05-cv-00556-GEC-mfu   Document 14   Filed 02/14/06   Page 7 of 18   Pageid#: 226

"food gets trapped in the bottom cavity causing the gum to become sore and bleed," the dentist determined that his cavities did not need to be filled that day. (Compl. at 6). When Dr. Bailey stated that the plaintiff's pain was "not the kind that would cause [the plaintiff] to bang [his] head on the wall," the plaintiff told him that his pain "should not have to be that bad to get dental care." (Compl. at 6). Dr. Bailey advised the plaintiff that he would be placed on the list and that he would be seen eventually. However, the plaintiff alleges that he is still "enduring toothaches." (Compl. at 6).

While the court does not doubt the plaintiff's allegations regarding his dental problems, the court cannot conclude that the plaintiff's allegations are sufficient state a claim of deliberate indifference against Dr. Bailey. At most, the plaintiff's allegations are sufficient to state a claim for malpractice, which is not actionable under § 1983.[3] See Estelle, 429 U.S. at 105-106. Therefore, the court will dismiss the plaintiff's fifth claim.

F.  Claim Six

In his sixth claim, the plaintiff seeks to challenge the constitutionality of the grooming policy "enforced against [him] by the directive of Gene M. Johnson." (Compl. at 6.) The plaintiff alleges that his religion, the Law of the Vow of the Nazarite, prohibits him from shaving the hair on his face or head during the period of his vow. The plaintiff submitted a request for a hearing on the issue on April 11, 2005. Defendant Y. Taylor responded to the form, explaining that inmates must comply with the grooming policy maintained by Departmental Operating Procedure (DOP) 864. The plaintiff now maintains that this policy infringes his First

---

[3]  The court notes that the additional facts pertaining to this claim, which are included in the plaintiff's second motion to amend, do not alter the court's conclusion.

Amendment right to freely exercise his religion.

The United States Court of Appeals for the Fourth Circuit has upheld the constitutionality of DOP 864 against the same challenge that the plaintiff asserts. In <u>DeBlasio v. Johnson</u>, 128 F. Supp. 2d 315 (E.D. Va. 2000), <u>aff'd</u> <u>Madison v. Johnson</u>, 12 Fed. Appx. 149 (4th Cir. 2001), the court held that the policy does not violate the Free Exercise Clause, because it is rationally related to legitimate state prison interests of suppressing contraband, limiting gang activity, maintaining discipline and security, and preventing inmates from "quickly changing their appearance." <u>DeBlasio</u>, 128 F. Supp. 2d at 323. Based on the reasoning of the <u>DeBlasio</u> opinion, which was affirmed by the Fourth Circuit, the court concludes that the plaintiff's sixth claim must be dismissed.

G. <u>Claim Seven</u>

In his seventh claim, the plaintiff alleges that he was subjected to cruel and unusual punishment by Assistant Warden Armentrout, Dr. Williams, and Nurse Mullins, when they authorized prison officials to place the plaintiff on the loaf meal again from May 17, 2005 to May 21, 2005, despite his numerous complaints that the loaf meal makes him extremely sick. The plaintiff further alleges he suffered days of severe stomach pains from being placed on the loaf meal, and that the loaf meal again caused him to vomit acidic bile and blood.

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981). However, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. <u>Id.</u> at 347. In order to state a claim of constitutional significance, an inmate must allege facts which show that he has either sustained a serious or significant physical

9

or emotional injury resulting from the challenged conditions of confinement, or that the conditions have created an unreasonable risk of serious injury. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). An inmate must also allege facts which show that prison officials acted with deliberate indifference. Id. at 1379. Based on the plaintiff's history of complaints regarding the effects that the loaf meal has on his stomach, and his allegation that the loaf meal again caused him to vomit acidic bile and blood, the court concludes that the plaintiff has alleged sufficient facts to state a claim against Assistant Warden Armentrout, Dr. Williams, and Nurse Mullins.

The plaintiff also alleges that Nurse Moore acted with deliberate indifference after he was placed on the loaf meal. The plaintiff contends that he told Moore that the loaf meal was causing him to vomit acidic bile and blood, yet "she simply said okay and walked away." At this time, the court concludes that the plaintiff's allegations regarding Nurse Moore are sufficient to survive the court's sua sponte review. However, to the extent that the plaintiff also seeks to challenge the manner in which F. Stanley, R. Mullins, and D.L. Muncy responded to his grievances against Dr. Williams and Nurse Mullins, the court concludes that the plaintiff's allegations regarding these defendants are insufficient to state a claim of constitutional magnitude.

    H.    Claim Eight

In his eighth claim, the plaintiff alleges that his Zantac prescription expired again in May of 2005, even though he asked Dr. Williams to renew the prescription. The plaintiff states that on May 25, 2005, he filed an emergency grievance stating that he had not received his morning pill, and that his stomach was hurting. Nurse Yates, who responded to the grievance, explained

10

that his prescription had expired. However, she did not examine the plaintiff. The plaintiff then filed an informal complaint. In response to the complaint, Jane Doe stated that "Dr. Williams will not just write you an order for Zantac. He will need to reassess your medical condition. Sign up for sick call if your condition has not gotten any better." (Pl. Exhibit 5-H). The plaintiff alleges that he then signed up for sick call and explained that his stomach was in pain. On May 30, 2005, Nurse Stitham walked past the plaintiff's cell and advised him that she was going to put the plaintiff on the list to see the doctor for "med renewal." (Compl. at 8). However, the plaintiff alleges that she did not examine him or ask what was wrong. The plaintiff ultimately saw Dr. Williams on June 1, 2005. The doctor agreed to renew the plaintiff's prescription.

Having reviewed the plaintiff's allegations, the court concludes that the plaintiff has failed to allege sufficient facts to show that the named medical defendants acted with deliberate indifference to a serious medical need. At most, the plaintiff's allegations imply negligence or malpractice on the part of these defendants, neither of which is not actionable under § 1983. See Estelle, 429 U.S. at 105-106. Therefore, the court will dismiss the plaintiff's eighth claim.

I.  Claim Nine

In his ninth claim, the plaintiff alleges that excessive force was used against him on June 24, 2005, and that certain defendants failed to protect him from the use of excessive force. Specifically, the plaintiff alleges that despite telling Assistant Warden Armentrout on numerous occasions that he is an asthmatic, Armentrout directed officers to gas the plaintiff. The plaintiff was subsequently "sprayed in the face with gas from an MK-46 device," which caused "extreme difficulty breathing, blindness, burning of [the plaintiff's] skin, and a temporary loss of consciousness." (Compl. at 9). The plaintiff was then placed in four-point restraints for twenty-

11

four hours. The plaintiff alleges that during the twenty-four hour period, Lieutenant Mullins, Sergeant Tate, and Sergeant O'Quinn refused to release him from the restraints, even though he created no disturbances. The plaintiff also alleges that while he was still restrained, Corporal Fleming repeatedly punched him as Lieutenant Turner, Corporal Lyall, and Corporal Baker blocked the doorway from being viewed by the pod video recorder. The plaintiff alleges that as a result of these actions, he suffered twenty-one days with numb thumbs; a week with a sore lower back; bruising to his ribs and stomach; migraine headaches; sleeplessness; severe cramps in his back, arms, and legs; depression and anxiety; and permanent scars to his wrist and ankles.

As previously explained, an inmate must satisfy two elements in order to state a claim for excessive force: (1) that the prison official acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. Williams, 77 F.3d at 761. Based on the foregoing allegations, the court concludes that the plaintiff's allegations are sufficient to survive the court's sua sponte review.

J.  Claim Ten

In his tenth claim, the plaintiff alleges that he was forced to breathe in second-hand smoke from March 30, 2005 to May 17, 2005, while he was housed in B-311. The plaintiff alleges that Officer Foster, who worked the day shift, and Officer Pennington, who worked the night shift, sat in the control booth and smoked during their entire shifts. The plaintiff alleges that because he is asthmatic, the smoke affected his ability to breathe. As a result, the plaintiff alleges that he was forced to use his inhaler more frequently during that seven-week period. The plaintiff further alleges that although he repeatedly informed Foster, Pennington, Lieutenant Rose, and J. Armentrout about his breathing difficulties, he was left in the cell.

12

As previously explained, the Eighth Amendment to the United States Constitution does not protect an inmate from exposure to merely uncomfortable, restrictive, or inconvenient conditions of confinement. Rhodes, 452 U.S. at 347. In order to state a claim of constitutional significance regarding prison conditions related to environmental tobacco smoke ("ETS"), a plaintiff must demonstrate that, due to the exposure, he sustained a serious or significant mental or physical injury, and that prison officials were deliberately indifferent to such health threats. Strickler, 989 F.2d at 1380-1381. Even assuming that the plaintiff was exposed to second-hand smoke from the control room, the court concludes that the plaintiff has failed to allege sufficient facts to establish that he suffered a serious or significant physical injury. While the court does not doubt that the plaintiff had to use his inhaler on a more frequent basis, the plaintiff's difficulty breathing is not the sort of medical condition that is sufficiently serious to state a constitutional claim. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (holding that the plaintiff failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where the plaintiff stated that his exposure to ETS resulted in breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy). Accordingly, the court will dismiss the plaintiff's tenth claim.

K. Claim Eleven

In his eleventh claim, the plaintiff alleges Correctional Officer Smith used excessive force against him on June 7, 2005. Specifically, the plaintiff alleges that while he was led from the shower on that date, he asked Smith why the officer had attacked another inmate. Smith subsequently told the plaintiff that he was tired of the plaintiff's mouth and that the plaintiff would "get the same thing [the other inmate] got." (Compl. at 11). The plaintiff alleges that

13

Case 7:05-cv-00556-GEC-mfu   Document 14   Filed 02/14/06   Page 13 of 18   Pageid#: 232

once he arrived at his cell, Smith punched him in the back of his head, and stomped on his shackles and ankles. The plaintiff alleges that he suffered a knot on his head, blurred vision, and cuts to his ankles. Having reviewed the plaintiff's allegations regarding the assault, the court concludes that the plaintiff has alleged sufficient facts to survive the court's sua sponte review. See Williams, 77 F.3d at 761

As part of his eleventh claim, the plaintiff also alleges that Corporal Boyd, Correctional Officer Ratliff, Correctional Officer Smith, and Corporal Lawson retaliated against him for filing lawsuits against officers employed by the Virginia Department of Corrections. According to the plaintiff, each of the defendants refused to feed him from June 10, 2005 to June 12, 2005. The officers told him that they would not feed him until he either withdrew or lost his pending lawsuits against officers employed by the Virginia Department of Corrections. The plaintiff alleges that he "endured severe stomach/hunger pains for over 72 hours." (Compl. at 12).

It is well established that a state official may not retaliate against an inmate for the exercise of a constitutional right. See American Civ. Liberties Union v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, a plaintiff "must demonstrate that he suffered more than a de minimis adverse impact on the exercise of his constitutional rights." Ballance v. Young, 130 F. Supp. 2d 762, 770 (W.D. Va. 2000) (citing American Civ. Liberties Union, 999 F.2d at 785. In this case, the plaintiff has failed to allege that the officers' actions had any adverse effects on his right to access the courts. There is no indication that the plaintiff actually withdrew any of his pending lawsuits, or that the lawsuits were dismissed as a result of the defendants' actions. Without sufficient facts to

14

Case 7:05-cv-00556-GEC-mfu   Document 14   Filed 02/14/06   Page 14 of 18   Pageid#: 233

demonstrate that his constitutional rights were chilled, the court concludes that the plaintiff's retaliation claim must be dismissed.

However, the court will construe the plaintiff's allegations to state a claim for cruel and unusual punishment against Boyd, Ratliff, Smith, and Lawson. At this time, the court concludes the claim for cruel and unusual punishment is sufficient to survive the court's <u>sua sponte</u> review.

L. <u>Claim Twelve</u>

In his twelfth claim, the plaintiff alleges that Nurse Mullins acted with deliberate indifference after he missed his evening dosage of medication on August 18, 2005. Specifically, the plaintiff alleges that he submitted an emergency grievance regarding the issue, on which he stated that he was unable to finish his dinner as a result of not receiving his medication, and that he was suffering from "very bad stomach pain." (Pl. First Mot. to Am. at 13). Nurse Mullins responded to the grievance, explaining that he would receive his medication the following day.

Having reviewed the plaintiff's allegations regarding Nurse Mullins, the court concludes that he has failed to allege sufficient facts to state a claim for deliberate indifference. At most, the plaintiff's allegations imply negligence on the part of Nurse Mullins, which as previously explained, is not actionable under § 1983.

The plaintiff also alleges that he vomited all night as a result of not receiving the evening medication. He filed another grievance, which was answered by Nurse Phipps. Nurse Phipps noted that the plaintiff had since received his medication and that he would be assessed by medical. As with his claim against Nurse Mullins, the court concludes that the plaintiff's allegations regarding Nurse Phipps are insufficient to state a claim under § 1983.

M. Claim Thirteen

In his thirteenth claim, the plaintiff alleges that Correctional Officers Rasnick, Cox, McCoy, Davidson, and Edwards acted with deliberate indifference by interfering with his ability to file an emergency grievance on September 5, 2005, after he failed to receive his morning dosage of Zantac. The plaintiff alleges that he "had eaten all of [his] breakfast, not knowing [he] would not get [his] Zantac, and the acid had [his] stomach hurting."

Having reviewed the plaintiff's allegations, the court concludes that the plaintiff has failed to allege sufficient facts to state a claim for deliberate indifference against these defendants. As previously explained, in order to establish a claim for deliberate indifference, the plaintiff must present sufficient facts to show that the defendants were aware of and disregarded an objectively serious medical need. Farmer, 511 U.S. at 834-837. Here, the plaintiff does not allege that the defendants were aware that he was experiencing symptoms that would indicate that he required immediate medical attention. Although the plaintiff alleges that he ultimately vomited in his cell, there is no indication that the plaintiff was vomiting or experiencing any similar symptoms at the time he requested assistance from the officers. Accordingly, the court will dismiss the plaintiff's thirteenth claim.

N. Claim Fourteen

In his fourteenth and final claim, the plaintiff alleges that he was denied due process during the course of a prison disciplinary proceeding. The plaintiff states that on June 24, 2005, Correctional Officer Lambert falsely charged him with stabbing an officer in the stomach, in retaliation for filing a grievance against Lambert. The plaintiff alleges that Lambert lied about the incident during the subsequent disciplinary hearing, and that Mullins, the hearing officer,

refused to view videos that would have exonerated the plaintiff. The plaintiff was ultimately found guilty of the charge. As a result, the plaintiff lost 180 days of good time credit.

The plaintiff appears to now seek two forms of relief: the restoration of the lost good-time credits, and monetary damages based on the allegedly unconstitutional procedure used to deprive him of the credits. However, neither form of relief is available. Pursuant to the United States Supreme Court's decision in Preiser v. Rodriguez, 411 U.S. 475, 500 (1973), a prisoner seeking the restoration of good time credits may only do so by way of a petition for writ of habeas corpus. Additionally, because the plaintiff's allegations, if proven, would necessarily imply the invalidity of his disciplinary conviction, the plaintiff's claim for monetary damages is not cognizable under § 1983. See Heck v. Humphrey, 512 U.S. 477, 487 (1994) (holding that a claim for monetary damage may not be brought under § 1983 if the claim "necessarily implies the invalidity of [the prisoner's] conviction or sentence."); Edwards v. Balisok, 520 U.S. 641, 645-648 (1997) (extending Heck to prisoner claims for damages stemming from the loss of good time credits). Accordingly, the plaintiff's due process claim must be dismissed.

To the extent the plaintiff seeks to assert a separate claim for retaliation against Lambert, the court concludes that such claim is also without merit. See Adams, 40 F.3d at 74 (holding that inmates have no constitutional right to a grievance procedure and that conclusory allegations of retaliation fail to state a claim under § 1983).

## CONCLUSION

For the reasons stated, the court concludes that the following claims set forth sufficient factual allegations to survive the court's sua sponte review: claim two, to the extent that it alleges the use of excessive force by Lieutenant Mullins; claim three, to the extent that it alleges

that Nurse Moore, Corporal Fields, Corporal McClean, and Sergeant Day acted with deliberate indifference to a serious medical need; claim seven, to the extent that it alleges the use of cruel and unusual punishment by Assistant Warden Armentrout, Dr. Wiliams, and Nurse Mullins, and deliberate indifference to a serious medical need by Nurse Moore; claim nine, to the extent that it alleges the use of excessive force and/or the failure to protect from excessive force against the following defendants: Assistant Warden Armentrout, Lieutenant Mullins, Sergeant Tate, Sergeant O'Quinn, Corporal Fleming, Lieutenant Turner, Corporal Lyall, and Corporal Baker; and claim eleven, to the extent that it alleges the use of excessive force by Correctional Officer Smith, and the use of cruel and unusual punishment by Corporal Boyd, Correctional Officer Ratliff, Correctional Officer Smith, and Corporal Lawson  All other claims and defendants will be dismissed.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

**ENTER**: This \_\_\_14th\_\_\_ day of February, 2006.

_/s/ Glen E. Conrad_
United States District Judge