CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
FEB 21 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DONELL J. BLOUNT, SR., ) | |
|     Plaintiff, ) | Civil Action No. 7:05CV00556 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| DR. WILLIAMS, et al., ) | By: Hon. Glen E. Conrad |
|     Defendants. ) | United States District Judge |

The plaintiff, Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983. The case is presently before the court on Blount's motion for a preliminary injunction. For the following reasons, Blount's motion will be denied.

### Background

Blount is incarcerated at Red Onion State Prison. In the present motion, Blount alleges that one of the defendants, Sergeant Delmer Tate, has engaged in "a campaign of harassment, retaliation and assaults" against him since this action was filed. Specifically, Blount alleges that Tate hit his wrist with a handcuff on September 25, 2006; that Tate turned the water off in his cell on September 26, 2006, causing him to vomit from the smell of feces and urine; and that Tate sprayed gas into his cell without justification on October 4, 2006. Additionally, Blount alleges that Tate has voiced a variety of physical threats.

The institutional defendants have filed a response to Blount's allegations, supported by affidavits and copies of Blount's medical records. With respect to the alleged incident on September 25, 2006, Tate alleges that he was responsible for escorting Blount to recreation on that date. When Tate attempted to handcuff Blount through the tray slot, Blount swung around and tried to grab Tate's hand. Tate emphasizes that if one of the handcuffs hit Blount's wrist, it was because Blount attempted to grab him. Tate alleges that he has no recollection of turning off

the water to Blount's cell on September 26, 2006, and that he has not ever threatened to harm Blount. Additionally, as for the alleged incident on October 4, 2006, Tate alleges that he was responsible for escorting Blount to a disciplinary hearing on that date. When he arrived at Blount's cell, Blount refused to place his hands in the tray slot. After being advised that he would not be able to go to the hearing if he did not comply with the officer's orders, Blount shouted an obscenity and placed his hands forward into the tray slot, rather than backing up to the tray slot to be cuffed from behind, as is required by prison procedure. Blount then refused to comply with several direct orders to remove his hands from the tray slot. When Tate gave him another direct order to remove his hands, Blount stuck his arms into the tray slot and knocked the tray slot box out of Tate's hands. In response, Tate utilized a one-second burst of pepper spray to Blount's facial area and closed the tray slot. Blount was then removed from his cell and taken to the showers for decontamination. Due to his continued disruptive behavior, Blount was placed in ambulatory restraints.

According to Warden Ray's affidavit, Blount has a lengthy history of assaulting staff members without warning. Ray alleges that Blount has assaulted staff members while fully restrained, and that he has a history of using the tray slot as a means to assault staff members. Consequently, staff members will not attempt to restrain Blount for removal from his cell unless a supervisory staff member is present to observe and assist as needed. Ray emphasizes that employees are specifically advised that they cannot retaliate against prisoners, even if prisoners engage in verbal and/or physical abuse, and that prisoner misconduct must be handled without an abusive response. Ray emphasizes that an employee will be subject to disciplinary action if the employee improperly reacts to prisoner misconduct. Ray further emphasizes that the prison has

2

processes to address Blount's allegations, and that Blount's allegations will receive appropriate consideration within the context of those processes.

Blount's medical records indicate that he did not complain of wrist pain on September 25, 2006 or vomiting on September 26, 2006. On September 27, 2006 and September 30, 2006, Blount was examined for complaints of tooth pain. The examination notes indicate that Blount did not complain of wrist pain or vomiting on either occasion. On October 4, 2006, Sergeant Tate contacted medical to inquire if Blount could be placed in ambulatory restraints. Tate was advised that no contraindications were noted in Blount's chart. Nurse Deel noted that she examined Blount after he was placed in ambulatory restraints, that she was able to place two fingers under each cuff, and that no injuries were noted. Approximately one hour later, Nurse Deel noted that Blount complained of chest pain when she arrived at his cell door. However, Blount refused to be assessed by the nurse. Later that evening, Blount was taken to the triage area for complaints of chest pain. Upon examining Blount, Nurse Phipps noted that his vital signs were within normal limits, that his heart rate and rhythm were regular, and that his lungs were clear. Additionally, an EKG test revealed no abnormalities. Blount was subsequently released from ambulatory restraints. Blount's medical records indicate that Blount did not voice any complaints at that time, and that no distress or injuries were noted.

## Discussion

A preliminary injunction is considered "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied 'only in [the] limited circumstances' which clearly demand it." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1992) (quoting Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 800 (3d Cir.

3

1989)). In deciding whether to grant a preliminary injunction, courts must normally consider four factors: (1) the likelihood of irreparable harm to the plaintiff if injunctive relief is not granted; (2) the likelihood of harm to the defendants if injunctive relief is granted; (3) the plaintiff's likelihood of succeeding on the merits of the action; and (4) the public interest. Hughes Network Systems, Inc. v. InterDigital Communications Corp., 17 F.3d 691, 693 (4th Cir. 1994); Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189, 195-96 (4th Cir. 1977). The plaintiff bears the burden of establishing that these factors support granting a preliminary injunction. Direx Israel, Ltd., 952 F.2d at 812. The likelihood of irreparable harm to the plaintiff is one of the most important factors. Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991). Without a showing that the plaintiff will suffer imminent, irreparable harm, the court cannot grant interlocutory injunctive relief. Id. at 360; Direx Israel, Ltd, 952 F.2d at 812.

Having reviewed the evidence in this case, the court concludes that Blount's motion for a preliminary injunction must be denied. Blount's allegations of assault and physical injury are unsupported by his medical records. While the court does not condone any misconduct that may have occurred on the part of Sergeant Tate, the court is unable to conclude that Blount is at risk of suffering imminent, irreparable harm. If Blount believes that Sergeant Tate has violated his constitutional rights, he may raise such claims in a separate civil rights action under § 1983.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to Blount and counsel of record for the defendants.

**ENTER:** This 20th day of February, 2007.

*[signature]*
United States District Judge

4