CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
for R'noke
MAR 2 6 2007
JOHN F CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DONELL J. BLOUNT, SR.,     )
     Plaintiff,          )     Civil Action No. 7:05CV00556
                    )
v.                    )     **MEMORANDUM OPINION**
                    )
                    )     By: Hon. Glen E. Conrad
DR. WILLIAMS, et al.,     )     United States District Judge
     Defendants.     )

The plaintiff, Donell J. Blount, Sr., a Virginia inmate proceeding pro se, filed this civil

rights action under 42 U.S.C. § 1983. The case is presently before the court on the motions for

summary judgment filed by the remaining defendants, as well as the motion to supplement and

dismiss defendants filed by Blount. For the reasons set forth below, the court will grant the

defendants' motions for summary judgment. The court will also grant the motion filed by

Blount. However, the new claims raised in Blount's motion will be dismissed, pursuant to 28

U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.

### Background

Blount is incarcerated at Red Onion State Prison, where the events giving rise to this

action allegedly occurred. In his original complaint and his first motion to amend, Blount

asserted fourteen groups of claims against more than forty individuals employed at Red Onion.

By opinion and order entered February 14, 2006, the court dismissed a portion of Blount's

claims, pursuant to 28 U.S.C. § 1915A(b)(1). On February 22, 2006, the court permitted Blount

to amend his complaint to include additional allegations.

The remaining institutional and medical defendants have moved for summary judgment.

The court issued Roseboro notices to Blount following the filing of the defendants' motions.

Since Blount has now responded to each of the motions for summary judgment, the motions are ripe for disposition.

## Standard of Review on Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted if "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

## Discussion

### A.   Claim One

In his first remaining claim, Blount alleges that Dr. Williams, D. Yates, P. Adams, and C. Moore acted with deliberate indifference to his medical needs for two weeks after he failed to receive his evening dosage of Zantac on February 10, 2005.[1] Specifically, Blount alleges that these defendants were aware that he was vomiting blood and experiencing severe pain, yet they chose to ignore his complaints.

To support their motion for summary judgment, Dr. Williams, D. Yates, Adams, and Moore argue that Blount's allegations are unsupported by his medical records. The medical records indicate that on February 15, 2005, Nurse J. Deel was called to Blount's cell. Blount

---

[1]    Blount originally named V. Phipps as a defendant with respect to this claim. However, in his motion to supplement and dismiss defendants, he has moved to dismiss Phipps from the case. The court will grant Blount's motion.

2

complained that he had not received his regular dosage of Zantac in four days and that he was vomiting blood. Deel noted that Blount was very loud and demanding, that he refused to be examined, and that he refused to be cuffed for a blood pressure assessment. On February 17, 2005, Blount advised Nurse W. Stidham that he had a burning pain in his stomach as a result of not receiving his stomach medication. Stidham indicated that she would refer Blount to a physician for further evaluation. Blount was later examined by Dr. Williams on February 24, 2005, at which time Dr. Williams renewed Blount's Zantac prescription for three months.

In response to the medical defendants' motion for summary judgment, Blount has submitted a sworn affidavit in which he alleges that they were aware that the "stopping of the Zantac was causing [him] severe [problems]," because he submitted numerous emergency grievances. On February 13, 2005, Blount submitted an inmate request to Dr. Williams, in which he threatened to file a federal lawsuit if Dr. Williams did not restart his prescription for Zantac. Blount alleged that Dr. Williams had stopped his prescription, and that he was vomiting and suffering from severe pain as a result. Dr. Williams responded to the request on February 17, 2005. Dr. Williams advised Blount that the prescription for Zantac had expired, that he had not merely stopped the prescription, and that Blount, himself, was responsible for making a follow-up appointment to renew medications. Dr. Williams further advised Blount to see a nurse for sick-call if he was in severe pain.

On February 14, 2005, Blount submitted an emergency grievance alleging that he did not receive his evening medication for acid reflux on February 10, 2005, and that he was experiencing stomach pain. D. Yates responded to the emergency grievance that same day. Yates advised Blount that his prescription had expired on February 10, 2005 and that he would have to sign up for sick-call in order to have his prescription renewed.

3

On February 17, 2005, Blount filed an emergency grievance complaining about a nurse's performance during sick-call. Blount reported that although he asked the nurse to check his blood pressure, the nurse told him that it was not necessary. D. Yates responded to the emergency grievance on February 17, 2005. Yates advised Blount that his grievance did not meet the definition of an emergency.

On February 22, 2005, Blount filed another emergency grievance in which he indicated that he had been told that he was on the list to see the doctor, that no doctor had seen him, and that his stomach was still in pain from acid reflux. Adams responded to the emergency grievance that same day, advising Blount that his grievance did not constitute an emergency and that he would have to fill out the proper request form.

In order to establish a constitutional violation for inadequate medical treatment, an inmate must show that a prison official exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). The test for deliberate indifference involves both an objective and a subjective component. The alleged deprivation must be, objectively, "sufficiently serious," and the official must know of and disregard an excessive risk to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834-837 (1994). Mere malpractice does not state a federal claim, Estelle, 429 U.S. at 105-106, nor does mere negligence in diagnosis. Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986). Likewise, questions of medical judgment are not subject to judicial review, Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975), and disagreements between an inmate and a physician over the inmate's proper medical care do not state a claim under § 1983 unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

4

Applying these principles, the court concludes that Dr. Williams, D. Yates, Adams, and Moore are entitled to summary judgment with respect to this claim. Neither Blount's medical records nor his grievance forms establish that any of these defendants acted with deliberate indifference to a serious medical need. First, there is absolutely no indication that Nurse Moore knew that Blount's prescription for Zantac had expired, or that he was suffering from any medical problems. Although Dr. Williams, D. Yates, and Adams were aware that Blount was allegedly suffering from stomach pain and/or vomiting as a result of not receiving his medication, these defendants did not disregard Blount's complaints. Instead, they repeatedly advised him of the procedure that must be followed to have a medication renewed. Their responses to his emergency grievances did not rise to the level of deliberate indifference. Even assuming that any of the defendants were somehow negligent in responding to Blount's grievances, neither negligence nor malpractice is actionable under § 1983. See Estelle, 429 U.S. at 105-106. Accordingly, the court will grant the medical defendants' motion for summary judgment with respect to this claim.

B.    Claim Two

In his second claim, Blount alleges that Lieutenant Mullins used excessive force against him on March 29, 2005. Specifically, Blount alleges that Mullins and other correctional officers ran into his cell and began placing his legal mail into an orange bag. When Blount told the officers that he had a court date before a magistrate judge, one of the officers said "[f]uck you and court." (Compl. at 3). After Blount told the officer that he did not have to use those words, Mullins allegedly threatened to "fuck" him. (Compl. at 3). According to Blount, Mullins then "tried to shove his finger into [Blount's] anus, but only managed to scratch [Blount's] rectum." (Compl. at 3). Blount alleges that when he awoke the following day, there was blood on the

5

back of his boxer shorts and bed sheet. (Compl. at 3).

In response to Blount's allegations, Mullins has submitted an affidavit in which he specifically denies having attempted to place his hand down Blount's pants. Mullins alleges that he, Sergeant Day, and Sergeant O'Quinn responded to Blount's cell on the evening of March 29, 2005 to assist officers who were attempting to search Blount's cell. Mullins contends that Blount was verbally disruptive throughout the time that his cell was searched, and that Blount had to be restrained by two correctional officers. Mullins also emphasizes that he did not touch Blount at all, much less place his hands down his pants, and that he did not voice any threats.[2]

Mullins also argues that Blount's allegations are unsupported by his medical records. Blount's medical records indicate that on the morning of March 29, 2005, Blount filed an emergency grievance complaining of chest pain. When Nurse Yates arrived at Blount's cell to examine him, Blount stood at his cell door laughing and advised the nurse that he was okay. On the morning of March 30, 2005, Nurse Stidham completed an Accident/Injury Report after Blount complained of an alleged assault. Although Nurse Stidham attempted to perform an examination, Blount refused, stating his reasons as his religious beliefs and the fact that no camera was available to record the examination. Blount was advised to follow up with the medical department as needed. On April 29, 2005, Blount was taken to the medical department, where Dr. Williams was instructed to examine him due to an alleged assault. Blount reported that an officer had put his hands down the back of his pants and tried to stick his finger into Blount's rectum. Dr. Williams noted that Blount became beligerent when the doctor attempted to ask additional questions regarding the incident, and that he refused to have an examination

---

[2]     Mullins' version of the events is supported by affidavits from Day and O'Quinn.

performed without it being videotaped. Consequently, Blount was returned to his cell without an examination.

In response to the institutional defendants' motion for summary judgment, Blount has submitted a sworn affidavit in which he repeats his original allegations against Mullins. Additionally, Blount alleges that after the officers left his cell, he touched the scratch and his hand came away bloody. Blount further alleges that he told two correctional officers to contact medical, but that they refused to do so. However, Blount acknowledges that he was taken to see a nurse the following morning. Blount alleges that while he initially objected to having a female nurse see his lower body parts, he conceded that she could examine him under the circumstances. Blount further alleges that when he asked the nurse to have photographs taken during the examination, for fear "that staff would deny the existence of any injury," Lieutenant Younce advised the nurse to report that Blount had refused to be examined. Blount alleges that Younce then removed the bloody sheet from Blount's cell and moved him to another building.

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. See Hudson v. McMillian, 503 U.S. 1, 5 (1992); Whitley v. Albers, 475 U.S. 312, 319 (1986). To succeed on an excessive force claim, an inmate must prove two elements: (1) that the correctional officer acted with a sufficiently culpable state of mind, and (2) that the harm inflicted on the inmate was sufficiently serious. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). With respect to the second element, an inmate "need not show that the force used caused an 'extreme deprivation' or 'serious' or 'significant' pain or injury to establish a cause of action." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). However, absent the most extraordinary circumstances, an inmate must provide proof of more than de minimis injury.

7

Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994). "De minimis injury can serve as conclusive evidence that de minimis force was used." Riley v. Dorton, 115 F.3d 1159, 1168 (4th Cir. 1997).

Applying these principles, the court concludes that Lieutenant Mullins is entitled to summary judgment. Blount has simply failed to show that the injury which resulted from the alleged use of force was more than de minimis. The only injury that Blount describes in his affidavit is a mere scratch, which is clearly constitutionally insignificant. See Taylor v. McDuffie, 155 F.3d 479, 484 (4th Cir. 1998) (holding that abrasions on the plaintiff's wrists and ankles were de minimis). Moreover, there is no indication that the scratch required medical treatment. While there is some dispute as to whether Blount refused to be examined the day after the alleged incident, Blount's medical records indicate that he did not request or receive subsequent medical care. Additionally, it is undisputed that Blount refused to be examined by Dr. Williams on April 29, 2005. Given these undisputed facts, no reasonable jury could find that the alleged scratch was more than de minimis. Although an inmate who suffers a de minimis injury may still recover if "extraordinary circumstances" are present, Norman 25 F.3d at 1263, the court concludes that such circumstances do not exist in this case. See Taylor, 155 F.3d at 485, n. 9 (concluding that the defendants' use of force "was not so 'diabolic' or 'inhuman' as to render the force unconstitutional regardless of injury," where the defendants allegedly jabbed a kubaton into the plaintiff's nose and mouth approximately eight to ten times after the plaintiff adhered to the defendants' orders) (internal citations omitted). Accordingly the court will grant the institutional defendants' motion for summary judgment with respect to this claim.

8

C.    Claim Three

In his third claim, Blount alleges that Nurse Moore[3] acted with deliberate indifference to his serious medical needs after he was placed on the loaf meal on April 1, 2005.[4] Blount alleges that he vomited blood and acidic bile for three days after he tried to eat the loaf meal, and that he received "zero medical care," even though he told Moore that he was sick. (Compl. at 5).

To support their motion for summary judgment, the medical defendants argue that Blount's allegations are unsupported by his medical records. Blount's medical records indicate that on April 1, 2005, Dr. Williams approved a request that Blount be placed on the loaf meal from April 2, 2005 to April 4, 2005. On April 4, 2005 at 7:45 a.m., Nurse T. Phipps approached Blount's cell for morning medications and sick-call. Phipps noted in Blount's examination record as follows: "[Inmate] waved for me to go on. I asked if he put in a sick call. He just waved me on too." Thus, Phipps noted that Blount refused nursing sick-call.

In response to the medical defendants' motion, Blount has submitted an affidavit in which he alleges that he did not refuse sick-call on April 4, 2005. Blount also refers to an emergency greivance form that he submitted on April 2, 2005, in which he reported that the loaf meal had caused him to regurgitate and suffer from a burning sensation in his stomach. Moore

---

[3]    Blount originally named Corporal Fields, Corporal McClellan, and Sergeant Day as defendants with respect to this claim. However, he has moved to dismiss these officers in his motion to supplement and dismiss defendants. As previously stated, the court will grant Blount's motion.

[4]    According to the affidavit from Sergeant Day, the Warden or his designee may authorize restricted feeding procedures when an inmate deliberately disrupts food service operations. Such restrictive food procedures include serving an inmate a bag meal twice a day consisting of a diet loaf. Prior to placing an inmate on restrictive feeding procedures, the Warden or his designee must obtain approval from the institution's physician. In this case, Warden T. Ray authorized Blount's placement on the loaf meal beginning with breakfast on Saturday, April 2, 2005 and ending with the evening meal on Monday, April 4, 2005.

9

responded to the emergency grievance that same day. Moore noted that Blount would be placed on the sick-call list.

Having reviewed the record, the court concludes that Blount's evidence is insufficient to survive the medical defendants' motion for summary judgment. First, the medical problems reported to Moore, vomiting and stomach pain, are not sufficiently serious to give rise to an Eighth Amendment claim. See Myers v. Milbert, 281 F. Supp. 859, 855-856 (N.D. W. Va. 2003) ("From a medical standpoint, the alleged adverse effects from eating nutra-loaf: vomiting, frequent bowel movements and burning in the chest and throat are not serious medical conditions."). Moreover, Blount has failed to establish that Moore acted with deliberate indifference to his complaints. To the contrary, Moore responded to Blount's emergency grievance and advised him that he would be placed on the sick-call list for evaluation. For these reasons, the court will grant the medical defendants' motion for summary judgment with respect to this claim.

D.    Claim Seven

In his seventh claim, Blount alleges that he was subjected to cruel and unusual punishment by Assistant Warden Armentrout, Dr. Williams, and Nurse Mullins, when they authorized prison officials to place him on the loaf meal again from May 17, 2005 to May 21, 2005, despite his numerous complaints that the loaf meal makes him extremely sick. Blount further alleges that he suffered from severe stomach pain as a result of being placed on the loaf meal, and that the loaf meal again caused him to vomit.

To support their motions for summary judgment, the defendants argue that there is no evidence that they were aware that the loaf meal posed a substantial risk of serious harm to Blount, and that Blount's medical records fail to support his complaints of vomiting. Upon

10

receiving the loaf meal request, Mullins reviewed Blount's medical records and noted that there were no contraindications. Additionally, the medical records indicate that Blount did not seek or receive medical treatment after he was placed on the loaf meal on May 17, 2005. Blount was not examined again until May 30, 2005, at which time he did not voice any complaints regarding the effects of being placed on the loaf meal. Instead, he only asked to have his prescription for Zantac renewed.

In response to the defendants' motions for summary judgment, Blount argues that Dr. Williams and Nurse Mullins did have prior knowledge of his complaints regarding the loaf meal. Relying on a request for information that he sent to the medical department, Blount emphasizes that the medical department maintains copies of complaint forms and emergency grievances pertaining to medical issues. Since Blount had previously filed emergency grievances when he was placed on the loaf meal in April of 2005, Blount argues that Dr. Williams and Nurse Mullins were aware that the loaf meal makes him sick.

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). However, inmates are not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Id. at 347. In order to state a claim of constitutional significance, a prisoner must satisfy both an objective and subjective component. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). To satisfy the objective component, a prisoner is required to demonstrate an "extreme" deprivation. Id. Specifically, "the prisoner 'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." Id. (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir.

11

1993)). Additionally, to satisfy the subjective component, the prisoner must allege facts which show that prison officials acted with "deliberate indifference." Strickland, 989 F.2d at 1379.

Having reviewed the record, the court concludes that Blount has failed to satisfy either component. First, Blount has failed to proffer sufficient evidence from which a reasonable jury could find that he suffered any serious injury as a result of being placed on the loaf meal. As previously stated, the injuries of which Blount complains – vomiting and stomach pain – are generally insufficient to support an Eighth Amendment violation, Myers, 281 F. Supp. at 855-856, and it is undisputed that Blount did not request or receive medical treatment while he was receiving the loaf meal. The court also concludes that Blount has failed to proffer sufficient evidence from which a reasonable jury could find that Dr. Williams, Nurse Mullins, or Assistant Warden Armentrout "actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 330 F.3d at 634. Although Blount did submit emergency grievances when he was previously placed on the loaf meal, Blount's medical records contained no contraindications. Accordingly, the court concludes that the defendants are entitled to summary judgment with respect to this claim.

      E.     <u>Claim Nine</u>

In his ninth claim, Blount alleges that excessive force was used against him on June 24, 2005, and that certain defendants failed to protect him from the use of excessive force. Specifically, Blount alleges that Assistant Warden Armentrout directed officers to gas him, even though he had advised Armentrout on numerous occasions that he suffers from asthma. Blount alleges that he was subsequently "sprayed in the face with gas from an MK-46 device," which caused "extreme difficulty breathing, blindness, burning of [his] skin, and a temporary loss of consciousness." (Compl. at 9). Blount alleges that he was then moved to another cell, where he

12

was placed in four-point restraints for twenty-four hours, and that Lieutenant Mullins, Sergeant Tate, and Sergeant O'Quinn refused to release him from the restraints, even though he created no disturbances. Blount alleges that the cell was filthy and that he was not provided soap, a mattress, toilet paper, or bathroom breaks. Blount also alleges that while he was still restrained, Corporal Fleming repeatedly punched him as Lieutenant Turner, Corporal Lyall, and Corporal Baker blocked the doorway from being viewed by the pod video recorder. Blount alleges that as a result of these actions, he suffered twenty-one days with numb thumbs; a week with a sore lower back; bruising to his ribs and stomach; migraine headaches; sleeplessness; severe cramps in his back, arms, and legs; depression and anxiety; and permanent scars to his wrist and ankles.

In response to Blount's allegations, the institutional defendants have provided a different version of events. According to their supporting affidavits, Blount assaulted Correctional Officer Lambert on June 24, 2005, by stabbing him through the tray slot with a sharpened spork. When Lieutenant Rose and Sergeant Barton attempted to handcuff Blount after the incident, Blount pulled away from the officers. Consequently, Sergeant Barton administered a half to one-second burst of OC pepper spray into Blount's cell. Blount subsequently complied with the officers' orders by backing up to the cell door, at which point they were able to restrain him. Blount was then taken to the pod showers for decontamination. After Blount was decontaminated, he began to complain of chest pain. Thereafter, officers took him to the medical department, where he was examined by Nurse Yates and Dr. Williams, and an EKG was performed. Examination notes indicate that Blount was awake and alert, and that his respiration was even but slightly labored. Upon his return from the medical department, Blount was placed

13

in ambulatory restraints[5] in cell B-401. Nurse P. Adams was called to examine Blount. Adams noted that she could place two fingers under each restraint, that Blount's pulses were present and equal, and that he did not have any injuries.

The defendants also address Blount's allegations pertaining to the conditions of cell B-401. According to Lieutenant R. Rose's affidavit, no inmates are placed in filthy cells. Rose explains that inmates in ambulatory restraints are not automatically provided with toilet paper and soap, due to the items' potential destructive uses, but that inmates are provided toilet paper and soap on request. Rose also indicates that inmates in ambulatory restraints are not given mattresses until bedtime. According to the pod log book, Blount was offered a mattress at 10:10 p.m. on June 24, 2005. However, because Blount became verbally disruptive, threatening to spit in the officer's face, Blount did not receive the mattress. The log book also contains over thirty additional entries documenting Blount's disruptive and/or threatening behavior while he was in ambulatory restraints.

The defendants have submitted affidavits from Fleming, Turner, Lyall, and Baker, in which they specifically deny Blount's allegation that he was assaulted by Fleming while fully restrained. Additionally, the defendants' records indicate that Blount was released from ambulatory restraints on June 25, 2005 at 5:00 p.m. At that time, he was examined by Nurse

---

[5]     The defendants have submitted an affidavit from Lieutenant R. Rose, in which he describes ambulatory restraints and explains the difference between ambulatory restraints and four or five-point restraints. Rose explains that when an inmate is placed in ambulatory restraints, the inmate wears leg irons and handcuffs, which are double locked, and a black box is placed over the center portion of the handcuffs, covering the keyhole. A security waist chain is then placed through the black box and down to the leg irons, with just enough length to allow the inmate to stand completely upright, but limiting his movement. Rose explains that an inmate in ambulatory restraints is able to use the bathroom, wash himself, feed himself, and walk around, but that he cannot lift his arms above his head or swing his arms around. In contrast, when an inmate is in four or five-point restraints, he is restrained to his bed and unable to move.

14

Deel. Deel reported that Blount had no injuries and that he did not voice any complaints.

In response to the institutional defendants' motion for summary judgment, Blount avers in his sworn affidavit that Armentrout requested that the extraction team, an attack dog, and a gas device be brought to Blount's cell for kicking the cell door. At that time, Blount repeatedly told Armentrout that he suffered from asthma. Blount was ultimately able to convince Armentrout that he did not need to be placed in ambulatory restraints. However, Blount agreed to consent to a strip search. Blount alleges that when he backed up to the cell door and placed his arms through the tray slot to be cuffed, Officer Lambert violently pressed Blount's right wrist against the tray slot. Consequently, Blount "pulled back from Lambert and attempted to grab Lambert's wrist in return." When he was unsuccessful, Blount "stood at the door arguing at Lambert." Blount alleges that he was then sprayed in the face with OC pepper spray, at which point he stopped arguing and backed up to the cell door to be restrained. Blount alleges that he subsequently fell while walking to the showers for decontamination, because he was having difficulty breathing. After being examined in the medical department, Blount was placed in ambulatory restraints in cell B-401. Blount alleges that the cell was unsanitary and that his pleas for soap, toilet paper, breaks, and a mattress were refused, even though he did not create a disturbance. Blount further alleges that Fleming punched him on June 25, 2005, while he was still restrained, and he specifically denies having ever assaulted Officer Lambert.

Based on the aforementioned allegations, Blount has essentially asserted three separate claims for excessive force: the first related to the use of pepper spray, the second related to his placement in ambulatory restraints, and the third related to the alleged assault by Fleming. As previously explained, an inmate must satisfy two elements in order to establish a claim for excessive force: (1) that prison officials acted with a sufficiently culpable state of mind, and (2)

15

that the harm inflicted on the inmate was sufficiently serious. Williams, 77 F.3d at 761. In this case, Blount has failed to proffer evidence to establish that he suffered any harm as a result of being placed in ambulatory restraints or punched by Officer Fleming. To the contrary, Blount's medical records indicate that he did not have any injuries at the time that he was released from ambulatory restraints and that he did not voice any complaints. Without evidence of more than de minimis injuries, Blount's claims related to his placement in ambulatory restraints and the conduct of Officer Fleming cannot survive the institutional defendants' motion for summary judgment.[6] See Norman, 25 F.3d at 1263.

The court also concludes that Blount has failed to proffer sufficient evidence of more than de minimis injuries resulting from the use of OC pepper spray. Although Blount alleges that he fell while walking to the showers for decontamination because he had difficulty breathing, the medical records indicate that his breathing was only "slightly labored" by the time that he was examined by Nurse Yates following the decontamination process. When Blount was examined by Nurse Adams an hour later, no complaints of shortness of breath were noted. Blount's medical records also indicate that he had no lasting pain in his chest. It is undisputed that he voiced no complaints upon being released from ambulatory restraints the following day, and that no medical treatment was required. Accordingly, the court concludes that no reasonable jury could find that Blount's injuries were more than de minimis and that the institutional defendants are entitled to summary judgment with respect to this claim.

---

[6]     Given Blount's lack of injuries, Turner, Lyall, and Baker are also entitled to summary judgment with respect to Blount's claim that they failed to protect him from Fleming. See Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (setting forth the standard for analyzing conditions of confinement claims). Likewise, to the extent Blount attempts to state a claim pertaining to the conditions of cell B-401, such claim is without merit. See Id.

16

F.    Claim Ten

In his tenth claim, Blount alleges that he was forced to breathe in second-hand smoke from March 30, 2005 to May 17, 2005, while he was housed in B-311. Blount alleges that Officer Foster, who worked the day shift, and Officer Pennington, who worked the night shift, sat in the control booth and smoked during their entire shifts. Blount alleges that the smoke affected his ability to breathe, since he suffers from asthma, and that he was forced to use his inhaler more frequently during the seven-week period. Blount further alleges that the exposure to tobacco smoke posed an unreasonable risk of serious damage to his future health.

To support their motion for summary judgment, the institutional defendants have submitted affidavits from Lieutenant Rose and R. O'Quinn, as well as a copy of the prison's smoking regulations contained in Institutional Operating Procedure (IOP) 858. The regulations indicate that Red Onion has designated smoking areas, which include offices or private work areas, that are not accessible to the public. Rose explains that the prisons's control rooms fall into this category, and that officers who wish to smoke in the control rooms are permitted to do so. However, Rose and O'Quinn, who serves as the Superintendent of Buildings and Grounds at Red Onion, explain that the control rooms run on separate ventilation systems from those which serve the individual cells. Rose further explains that the control rooms are sealed rooms and that the doors to the rooms remain closed unless someone is entering or exiting them.

The institutional defendants have also submitted a copy of an informal complaint form that Blount submitted on May 12, 2005, in which he complained that smoke from the nearby control room was worsening his asthma. Rose responded to the informal complaint and advised Blount that his cell was on a different ventilation system. The institutional defendants emphasize that Blount did not request a cell transfer.

17

The institutional defendants also emphasize that Blount's medical records contain no documentation to suggest that Blount voiced any complaints to medical personnel while he was housed in B-311 from March 30, 2005 to May 17, 2005. Blount's medical records indicate that he had contact with medical personnel on four separate occasions during that time period, and that he did not voice any complaints related to secondhand smoke.

In response to the institutional defendants' motion for summary judgment, Blount avers that guards often leave the control room windows open, which permits smoke to drift into the pod. Blount further avers that he had to use his inhaler more frequently while he was housed in B-311, due to the smoke's effect on his asthma.

As previously explained, the Eighth Amendment to the United States Constitution does not protect an inmate from exposure to merely uncomfortable, restrictive, or inconvenient conditions of confinement. Rhodes, 452 U.S. at 347. In order to state a claim of constitutional significance, an inmate must demonstrate that he sustained a serious or significant mental or physical injury as a result of the challenged conditions, Strickler, 989 F.2d at 1380-1381, or that the challenged conditions posed an unreasonable risk of damage to his future health. Helling v. McKinney, 509 U.S. 25, 33-35 (1993). Additionally, the inmate must allege facts which show that prison officials acted with deliberate indifference. Strickler, 989 F.2d at 1379. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (citing Farmer, 511 U.S. at 837)).

Having reviewed the record, the court agrees with the institutional defendants that Blount has failed to satisfy either component. First, Blount has failed to proffer sufficient evidence from which a reasonable jury could find that he suffered a serious injury as a result of the

18

tobacco smoke. Blount's exacerbated asthma symptoms, which allegedly required him to use his inhaler more frequently, are not sufficiently serious to rise to the level of an Eighth Amendment violation. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (holding that the plaintiff failed to allege injuries that were "sufficiently serious to be constitutionally actionable," where the plaintiff stated that his exposure to environmental tobacco smoke resulted in breathing problems, chest pains, dizziness, sinus problems, headaches, and a loss of energy). Moreover, there is no evidence that Blount sought medical treatment during the time period at issue or that his asthma required additional medication beyond that which he was already taking. See Bartlett v. Pearson, 406 F. Supp. 2d 626, 633 (E.D. Va. 2005) (holding that the plaintiff did not appear to suffer from serious medical need as a result of environmental tobacco smoke, where there was no evidence that his asthma required additional medical treatment). Although Blount also contends that he is at risk of future harm as a result of his seven-week exposure to environmental tobacco smoke, he has failed to produce any evidence to support his own conclusory assertions. Consequently, no reasonable jury could find that Blount faces an unreasonable, future risk of serious injury as a result of his challenged living conditions. See Helling, 509 U.S. at 35-36 (explaining that an Eighth Amendment claim of risk to future health "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [environmental tobacco smoke]").

The court also concludes that Blount has failed to proffer sufficient evidence from which a reasonable jury could find that the institutional defendants "actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 330 F.3d at 634. It is undisputed that Blount did not file a written complaint regarding the issue until May 12, 2005, at which time he complained of having to use his inhaler

19

as a result of smoke entering his cell. Blount did not request medical treatment or a cell transfer. Nonetheless, Blount was ultimately moved to a different cell less than a week later. Consequently, the record does not support a finding that the institutional defendants were both aware of and disregarded a serious injury or risk of serious harm. For these reasons, the court will grant their motion for summary judgment as to this claim.

G.     Claim Eleven

In his eleventh claim, Blount alleges that Officer Smith used excessive force against him on June 7, 2005. Specifically, Blount alleges that while he was being led to the shower on that date, he asked Smith why the officer had attacked another inmate. Smith subsequently told Blount that he was tired of Blount's mouth and that Blount would "get the same thing [the other inmate] got." (Compl. at 11). Blount alleges that once he arrived at his cell, Smith punched him in the back of his head, and stomped on his shackles and ankles. Blount further alleges that he suffered a knot on his head, blurred vision, and cuts to his ankles.

As part of his eleventh claim, Blount also alleges that Corporal Boyd, Officer Ratliff, Officer Smith, and Corporal Lawson refused to feed him from June 10, 2005 to June 12, 2005. As a result, Blount alleged that he "endured severe stomach/hunger pains for over 72 hours." (Compl. at 12).

To support their motions for summary judgment, the institutional defendants have submitted affidavits from Smith, Boyd, Ratliff, and Lawson. In his affidavit, Smith avers that he did not threaten or assault Blount on June 7, 2005 or any other date. Likewise, Smith, Boyd, Ratliff, and Lawson aver that they did not refuse to feed Blount. In fact, both Lawson and Ratliff indicate that Blount was housed in the B building in June of 2005, and that they were not assigned to that building during the time period at issue.

20

The institutional defendants also argue that Blount's allegations are unsupported by his medical records. After being examined by Dr. Williams on June 1, 2005, Blount was not examined by medical personnel until June 12, 2005. On that date, a correctional officer contacted the medical department because Blount was complaining of chest pain. Nurse Phipps responded to Blount's cell. Her examination notes indicate that she was unable to assess Blount because he was threatening to harm staff members. Blount was not seen again until June 24, 2005, when officers administered pepper spray.

Blount did not file a response to the institutional defendants' motion for summary judgment with respect to these claims. Blount's failure to respond to the officers' affidavits compels a finding that Smith did not use excessive force against him on June 7, 2005, and that Smith, Boyd, Ratliff, and Lawson did not refuse to feed him. See Fed. R. Civ. 56(e) (the nonmoving party on summary judgment may not rest upon the mere allegations in his complaint, but instead, must, with affidavits or other verified evidence, set forth specific facts showing that there is a genuine issue for trial). Further, the court agrees with the institutional defendants that Blount's allegations are unsupported by his medical records. Accordingly, the court will grant their motion for summary judgment with respect to the aforementioned claims.

H.     Claim Fourteen

In his final remaining claim, Blount alleges that Lieutenant Rose filed a false disciplinary charge against him for possessing a weapon in retaliation for speaking out against the maltreatment of another inmate. Relying on Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988), Blount alleges that Rose's conduct constituted a violation of his substantive due process rights. However, having reviewed Rose's affidavit in support of the institutional defendants' motion for summary judgment and Blount's response, the court concludes that this claim is without merit.

21

It is undisputed that the disciplinary charge at issue was ultimately dismissed, and thus, that Blount suffered no punishment as a result of the charge. Consequently, Rose is entitled to judgment as a matter of law with respect to Blount's substantive due process claim. See Chidubem v. McGinnis, 1997 U.S. App. LEXIS 36755, 2-3 (6th Cir. 1997) (holding that an inmate could not state a substantive due process claim with regard to false misconduct charges since the charges were ultimately dismissed); Burton v. Strassburg, 1995 U.S. App. LEXIS 38453 (6th Cir. 1995) (same); see also Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988) (holding that an inmate would be entitled to relief under § 1983, if he could prove that he was subjected to false disciplinary charges and subsequent punishment for exercising his First Amendment rights) (emphasis added).

I.    Claims Raised in the Motion to Supplement and Dismiss

In addition to moving to dismiss certain defendants, Blount has moved to supplement his complaint to include new claims against Nurse L. Yates and Nurse Mullins. The court will grant Blount's motion to supplement his complaint. However, for the following reasons, the court concludes that the new claims raised in the motion are without merit.

Blount first claims that Nurse Yates acted with deliberate indifference to his medical needs after he failed to receive his evening dose of Zantac on February 10, 2005. To support this claim, Blount alleges that Yates was made aware of his medical problems in emergency grievances submitted on February 15 and 16, 2005, and that she did not respond appropriately. Blount has submitted the grievances as exhibits. In the first grievance, Blount alleged that he had not received his medication for acid reflux and that he was vomiting acidic bile and blood. Yates responded to the emergency grievance that same morning. Yates advised Blount that his grievance did not meet the definition of an emergency, but that he would be evaluated. In the

22

second grievance, Blount advised the medical department that two nurses had been in his pod that morning, but that he had yet to be examined. In response, Yates advised Blount that he was scheduled for sick-call.

With respect to Nurse Mullins, Blount alleges that she acted with deliberate indifference to his medical needs after he was placed on the loaf meal on April 2, 2006. To support this claim, Blount alleges that he filed an emergency grievance on April 4, 2005 and that Nurse Mullins failed to evaluate him. Blount submitted a copy of the grievance as an exhibit. In the grievance, Blount alleged that he was in pain as a result of eating the loaf meal and that he needed something to eat that he could digest. Mullins responded to the emergency grievance that same day. Mullins advised Blount that his grievance did not constitute an emergency, but that he would be scheduled for sick-call.

Having reviewed the aforementioned claims, the court concludes that Blount has failed to allege sufficient facts to show that Yates or Mullins acted with deliberate indifference to his medical needs. Upon receiving Blount's emergency grievances, both nurses advised Blount that he would be evaluated. While Blount may disagree with the nurses' opinions as to the severity of his complaints, such disagreements fail to state a claim for deliberate indifference. See Russell, 528 F.2d at 319; Wright, 766 F.2d at 849. Even assuming that either nurse was somehow negligent in her response, neither negligence nor malpractice is actionable under § 1983. See Estelle, 429 U.S. at 105-106. Accordingly, Blount's claims against L. Yates and Mullins must be dismissed.

## Conclusion

For the reasons stated, the court will grant the defendants' motions for summary judgment and the plaintiff's motion to supplement and dismiss defendants. However, the new

23

claims raised in the plaintiff's motion will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiff.

**ENTER:** This ___23^{rd}___ day of March, 2007.

United States District Judge

24